UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DEBRADRE D. JACKSON**,

      Plaintiff,

v.            **Case No. 15-cv-771-pp**

**SGT. SLOME, et al.**,

      Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), DENYING WITHOUT PREJUDICE HIS MOTION FOR A JURY TRIAL (DKT. NO. 8), AND SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

---

  The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) and his demand for a jury trial (Dkt. No. 8) and screens the plaintiff's complaint.

**I. Plaintiff's Motion for Leave to Proceed *In Forma Pauperis***

  The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial

filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 20, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $9.03. Dkt. No. 7. The plaintiff paid the partial filing fee on August 3, 2015. The court grants the plaintiff's motion for leave to proceed *in forma pauperis*, and allows the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

**II.    Screening of the Plaintiff's Complaint**

    A.    *The Law Governing Screening of Complaints*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious,"

2

Case 2:15-cv-00771-PP    Filed 01/07/16    Page 2 of 17    Document 10

although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions

3
Case 2:15-cv-00771-PP   Filed 01/07/16   Page 3 of 17   Document 10

with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  *The Plaintiff's Allegations*

The plaintiff currently is incarcerated at Racine Correctional Institution ("RCI"). Dkt. No. 1 at 1. The complaint names the following RCI officials: Sgt. Slome, Lt. Curtis, Lt. Londre, Cpt. Wiegand, Security Director J. Aldana, Deputy Warden Ronald Malone, Librarian Ms. Graba, and Warden Paul Kemper. He also sues RCI and the Wisconsin Department of Corrections. Id. The plaintiff requests damages in the amount of $80,000. Id. at 15.

The complaint states that on March 4, 2015, the plaintiff went to the RCI library to get three affidavits he wished to use in an appeal notarized by defendant Graba. He alleges that Graba refused to notarize the affidavits and confiscated them. Graba said she was confiscating the affidavits at the

4

direction of security, but the plaintiff alleges this statement was untrue. Id. at 2.

Sometime thereafter, Sgt. Slome gave plaintiff a conduct report for "group resistance and petitions, enterprising and fraud, and possession of contraband." Id. at 3. Aldana processed the conduct report as a "major disciplinary" violation. Id. On March 23, 2015, Aldana ordered Londre to dismiss the report due to unsupported evidence. Id. The complaint alleges that the plaintiff's inmate complaint was rejected on April 13, 2015, and that defendant Kemper affirmed that rejection on April 27, 2015. Id. With regard to the confiscated materials, the plaintiff alleges that no one returned them, id., despite the fact that Aldana agreed to do so and ordered a non-defendant named Lt. Mickels to do so, id. at 7. The plaintiff argues that while the warden "insists" that the materials were returned to the plaintiff, "[t]he plaintiff is deprived of his property." Id.

On March 23, 2015, Slome asked the plaintiff about the hearing on the above referenced conduct report. Id. at 5. The plaintiff informed Slome that the conduct report had been dismissed. On March 26, 2015, Slome and another officer searched and confiscated 111 pages of the plaintiff's legal documents. Id. Slome wrote a confiscation form and said to the plaintiff, "I am not writing you a ticket just to get it threw [sic] out, I am forwarding the confiscated items to the security director and let him make the decision." Dkt. No. 1 at 6. Slome also informed the plaintiff that he was confiscating the plaintiff's materials

5

because of his participation in the "Sovereign Citizen Movement" and because he had renounced his U.S. citizenship. Dkt. No. 1 at 8, 9.

On March 27, 2015, Wiegand wrote a conduct report accusing the plaintiff of "group resistance and petitions" and "unauthorized use of mail," id. at 6, even though he admitted that he did not know how the plaintiff's legal work constituted group resistance, id. at 8-9. Curtis authorized the placement of the plaintiff into "TLU status" (the complaint does not explain what this means) pending a due process hearing. Id. at 6. The plaintiff informed Curtis that the staff was harassing him and this lockup was in retaliation for Slome's prior conduct report being dismissed. Curtis did nothing despite admitting that he did not know why legal work would be considered group resistance. Id.

On April 1, 2015, a hearing was held and Londre found the plaintiff guilty of "Group Resistance and petitions," and not guilty of unauthorized use of mail. Id. Londre sentenced the plaintiff to a term of thirty days in disciplinary segregation. Id. The plaintiff indicates that Londre admitted that he had no knowledge of why the plaintiff's legal work would be considered contraband or group resistance, but he found the plaintiff guilty anyway. In segregation, the plaintiff was restricted from normal general population activities, and was allowed only limited property possession, limited resources, and limited use of the law library. Id.

Preceding the hearing, the plaintiff contacted Aldana and asked that he return the plaintiff's legal materials. Id. at 7. Aldana ordered Mickels to return the materials to the plaintiff, but Mickels located only the three affidavits

confiscated by Graba, not the 111 pages confiscated by Slome. The plaintiff alleges that the warden "insists" that the materials were returned to the plaintiff, although there is no documentation demonstrating their return. Id.

On April 2, 2015, the plaintiff appealed Londre's decision on the conduct report. Id. Defendant Malone affirmed Londre's disposition on May 15, 2015. Id.

On June 15, 2015, the Racine business office approved the plaintiff for a legal loan. Id. at 3. Two days later, the plaintiff went to the library to make copies relating to this lawsuit. Graba refused to make the plaintiff's copies, noting that he had insufficient funds to do so. The plaintiff showed Graba the business office's legal loan approval letter, but she continued to refuse to make the copies. Id. The plaintiff alleges that Graba refused to make the copies in retaliation for being named as a defendant in the lawsuit. Id. at 4.

On June 18, 2015, the plaintiff contacted Graba's supervisor in an attempt to obtain the copies he'd been denied. Id. The supervisor informed the plaintiff that Graba had informed her of the situation and told her that the business office had indicated that the plaintiff was not eligible for a legal loan. With the help of his housing supervisor, the plaintiff contacted the business office, who in turn contacted the library to inform the librarians that the plaintiff had been approved for a loan. Id. The plaintiff contends that Graba lied to her supervisor about the plaintiff not having an approved loan. Id. at 5.

C. *Application of the Law to the Allegations*

    1. <u>Racine Correctional Institution, Wisconsin Department of Corrections, and official capacity claims</u>

The court will dismiss Racine Correctional Institution and the Wisconsin Department of Corrections, because they are organizations, not individuals. Title 42 U.S.C. §1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the *individual* defendant caused or participated in a constitutional violation." <u>Vance v. Peters</u>, 97 F.3d 987, 991 (7th Cir. 1996) (emphasis added) (quoting <u>Sheik-Abdi v. McClellan</u>, 37 F.3d 1240, 1248 (7th Cir. 1994)). Section 1983 does not make government entities automatically liable for the acts of the people they employ. <u>See, e.g.</u>, <u>Warner v. City of Terre Haute, Ind.</u>, 30 F. Supp. 2d 1107, 1120 (S.D. Ind. 1998) (citations omitted). Only when a plaintiff alleges, and shows, that the government entity had an "express . . . policy, widespread custom, or deliberate act of a decision-maker for [the government entity], which proximately caused [the plaintiff's] injury," does a plaintiff state a §1983 claim against a government entity. <u>Davis v. Carter</u>, 452 F.3d 686, 691 (7th Cir. 2006) (citing <u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658, 690-91 (1978)). Because the plaintiff in this case has not sufficiently alleged any such policy, custom or deliberate act of a decision-maker, his complaint does not state a claim against either Racine Correctional or the Department of Corrections.

Along these same lines, the court will not allow the plaintiff to proceed on claims against the individual defendants in their official capacities. The distinction between official capacity and individual capacity is significant.

"Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S.159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. Id. On the other hand, an official-capacity suit is appropriate when a person is only executing or implementing the official policy or custom of a government entity. Id. The plaintiff's allegations do not indicate or imply the existence of an official policy or custom. Simply concluding that a policy or custom exists is not sufficient. Such a legal conclusion must be supported by factual allegations that make the conclusion plausible. The plaintiff's allegations indicate only that each individual defendant acted on his/her own to deprive the plaintiff of his constitutional rights.

Because the plaintiff has not stated claims against any of the individual defendants in their official capacity, the court will not allow him to proceed on official capacity claims against individual defendants.

2. Retaliation and failure to intervene claims

To state a First Amendment retaliation claim, the plaintiff must plead that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in

9

the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir.2008)). At the pleading stage, the plaintiff has satisfied all three prongs of a retaliation claim with regard to Graba (who confiscated the plaintiff's legal materials and reported him to security in response to his pursuit of legal action) and Slome (who confiscated the plaintiff's materials and wrote a conduct report against the plaintiff in response to his pursuit of legal action). The court will allow the plaintiff to proceed on a retaliation claim against those defendants. The plaintiff also has stated claims against Wiegand (who wrote a conduct report against the plaintiff) and Curtis (who ordered that the plaintiff be placed in "TLU status") that they failed to intervene to stop Slome's retaliation, despite being asked by the plaintiff to do so.

The court will not, however, allow the plaintiff to proceed against Graba on the theory that she refused to make copies of his legal materials because he named her in a lawsuit. The fact that an inmate does not receive copies on demand is not a deprivation that would likely deter First Amendment activity in the future.

    3.    Defamation claim

To state a claim for defamation under Wisconsin law, a plaintiff must allege: 1) a false statement; 2) communicated by speech, conduct or in writing to someone other than the person defamed; 3) that is unprivileged and is defamatory. Hart v. Bennet, 2003 WI App. 231, ¶21, 267 Wis.2d 919, 941 (Wis. Ct. App. 2003). The court will exercise supplemental jurisdiction pursuant to

10
Case 2:15-cv-00771-PP   Filed 01/07/16   Page 10 of 17   Document 10

28 U.S.C. §1367(a) and allow the plaintiff to proceed on his state law claim that Slome defamed him when Slome falsely stated in a written report that the plaintiff had renounced his U.S. citizenship.

However, the plaintiff may not proceed on a defamation claim against Graba. The plaintiff alleges only that Graba falsely told her supervisor that the plaintiff had not been approved for a legal loan. Dkt. No. 1 at 4-5. Under Wisconsin law, a statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Milsap v. Journal/Sentinel, Inc., 100 F.3d 1265, 1269 (7th Cir. 1996) (citations omitted). Graba's statement about the plaintiff's loan status would neither lower the plaintiff's reputation in the estimation of the community, nor deter third parties from dealing with him. Even if it wasn't true, Graba's statement that the plaintiff hadn't been approved for a legal loan had no relation to the plaintiff's character or reputation.

  4. <u>Supervisory claims</u>

The plaintiff alleges that Aldana ordered Londre to dismiss the conduct report written by Slome, based on unsupported evidence. On March 25, 2015, Aldana informed the plaintiff that the matter was closed. In addition, after a request from the plaintiff, Aldana ordered Mickels to return the confiscated legal materials to the plaintiff. Kemper did not oppose Aldana's decision to return the legal materials (including the affidavits), although Mickels has not yet been able to locate them. The plaintiff does not allege that Aldana or Kemper personally caused or participated in a constitutional violation; thus, it

11

appears that the plaintiff is trying to state a claim against them because they supervised those who the plaintiff claims acted to deprive him of his constitutional rights. The plaintiff cannot state a claim on this basis, because §1983 does not provide for supervisory liability. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009) (§1983 makes public employees liable "for their own misdeeds but not for anyone else's"). Thus, the court will dismiss Aldana and Kemper as defendants.

    5.   Due process claims

At a hearing on the plaintiff's conduct report, Londre found the plaintiff guilty of group resistance and sentenced him to thirty days in disciplinary segregation. The plaintiff appealed this decision to Malone. The plaintiff argues that Londre and Malone violated his right to due process by making these decisions. The plaintiff has not, however, alleged any facts to demonstrate that he was deprived a liberty interest protected by the Due Process Clause. See Kervin v. Barnes, 787 F.3d 833, 835-37 (7th Cir. 2015) (finding that a plaintiff who was in segregation for at most thirty days and did not allege any significant psychological or other injury as a result failed to state a due process claim).

In addition, because Aldana ordered that the plaintiff's legal materials be returned to him, Slome's confiscation of the plaintiff's property was random and unauthorized. In these circumstances, due process requires only that an adequate post-deprivation remedy exist. See Leavell v. Illinois Dep't of Natural Resources, 600 F.3d 798, 805 (7th Cir. 2010). By statute, Wisconsin provides

12

Case 2:15-cv-00771-PP   Filed 01/07/16   Page 12 of 17   Document 10

procedures for remedying random, unauthorized deprivations of property by state officers. See Wis. Stat. § 893.35.

For these reasons, the court will not allow the plaintiff to proceed on due process claims against Londre, Malone or Slome.

6.  Class of one claim

The plaintiff alleges that some of the defendants discriminated against him because of his participation in the Sovereign Citizens movement; he argues that he was a "class of one" who was not given the same protections as those who weren't a member of that class. To state a "class of one" equal protection claim, a plaintiff must allege that government officials treated another similarly situated person more favorably than him and that there was no rational basis for the difference in treatment. Enquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008); Thayer v. Chiczewski, 705 F.3d 237m, 255-56 (7th Cir. 2012). The plaintiff, however, has not identified another similarly situated inmate. His vague allegation that other similarly situated inmates exist does not constitute a sufficient factual basis for supporting an equal protection claim, and thus the court will not allow him to proceed on that claim.

7.  Access to courts claim

To state a claim that a plaintiff has been denied access to the courts, a plaintiff must "make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006) (citations omitted). Mere denial of access to legal materials is not itself a violation of a prisoner's rights. Id. A plaintiff must allege that the

13

defendants' conduct prejudiced a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement. Id. The plaintiff has failed to allege that Graba's or Slome's confiscation of his legal materials or Kemper's affirmation of a rejected complaint regarding the confiscation prejudiced a potentially meritorious claim. The plaintiff alleges only that the filing of the affidavits in his appeal were delayed by Graba's confiscation (not that he lost the appeal as a result of his failure to timely file the affidavits). Further, Slome's confiscation had no impact on the plaintiff's ability to pursue his claims in this lawsuit. The court will not allow the plaintiff to proceed on his access to the courts claim.

D. *Conclusion*

The court will allow the plaintiff to proceed on his retaliation claims against Graba and Slome, on his failure to intervene claims against Wiegand and Curtis, and on his state law defamation claim against Slome.

### III.   **The Plaintiff's Notice of Motion and Motion for a Jury Trial**

The plaintiff has filed a notice to the defendants and the court that he intends to request a jury trial. Dkt. No. 8. By this order, the court is allowing the plaintiff to proceed on certain claims against certain defendants. The defendants will accept service of the complaint pursuant to an informal service agreement with the Wisconsin Department of Justice. Once those defendants have filed an answer to the complaint, they will know that the plaintiff has sued them, and they'll know why. At that point, the court will set a schedule for discovery and for motions. The plaintiff's jury demand is on the docket; if

14

Case 2:15-cv-00771-PP   Filed 01/07/16   Page 14 of 17   Document 10

and when the time comes for scheduling a trial, the defendants will be aware that the plaintiff has demanded a trial by jury. There is no need for the court to issue a ruling on his demand.

## IV.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

The court **DISMISSES** defendants Racine Correctional Institution, the Wisconsin Department of Corrections, Aldana, Malone, Londre and Kemper.

The court **ALLOWS** the plaintiff to proceed on his retaliation claims against Graba and Slome, on his failure to intervene claims against Wiegand and Curtis, and on his state law defamation claim against Slome.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the court will send electronic copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Graba, Slome, Wiegand and Curtis.

The court **ORDERS** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Graba, Slome, Wiegand and Curtis shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $340.97 balance of the filing fee by collecting monthly payments

from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this case.

The court further **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. That will only delay the processing of the case. Because someone in the clerk's office will electronically scan each filing and enter it on the docket, the plaintiff does not need to mail copies to the defendants. The defendants will be served electronically through the court's electronic case filing system. The plaintiff should also keep a personal copy of each document he files with the court.

The court further advises the plaintiff that failure to timely file documents or pleadings may result in the court dismissing the case for failure to prosecute. In addition, the plaintiff shall continue to notify the clerk of court of any change of address. Failure to do so could result in orders or other

16

Case 2:15-cv-00771-PP   Filed 01/07/16   Page 16 of 17   Document 10

information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated in Milwaukee, Wisconsin this 7th day of January, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge