UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEBRADRE D. JACKSON,

                    Plaintiff,

                                                    Case No. 15-cv-771-pp

         v.

SCOTT SLOME,
JEREMIAH CURTIS, AND
KIMBERLY GRABA,

                    Defendants.

**DECISION AND ORDER DENYING THE PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 39), DENYING THE PLAINTIFF'S
MOTION TO EXCLUDE THE DECLARATION OF JACKIE K. RIGHTER
(DKT. NO. 42), DENYING PLAINTIFF'S MOTION FOR SANCTIONS
(DKT. NO. 51), GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 28), AND DISMISSING CASE**

         Plaintiff DeBradre Jackson, a Wisconsin state prisoner who is

representing himself, filed a case under 42 U.S.C §1983, alleging that the

defendants violated his civil rights at the Racine Correctional Institution. Dkt.

No. 1. The court screened the complaint under 28 U.S.C. §1915A, and allowed

the plaintiff to proceed with three claims: (1) a First Amendment retaliation

claim against Scott Slome and Kimberly Graba; (2) a failure-to-intervene claim

against Jeremiah Curtis and Thomas Wiegand; and (3) a state-law defamation

claim against Scott Slome. Dkt. No. 10. The court did not allow the plaintiff to

proceed against Graba for failure to make copies for him or for defamation, did

not allow him to proceed against various defendants on theories of supervisory

1

liability or due process, did not allow him to proceed on a class of one equal protection claim, and did not allow him to proceed on his denial-of-access-to-courts claim.

On March 14, 2016, the court issued a scheduling order. Dkt. No. 16. Less than a week later, on March 18, 2016, the plaintiff filed a motion for summary judgment, which the court denied without prejudice. Dkt. Nos. 19, 25. The defendants timely filed their motion for summary judgment on July 15, 2016, dkt. no. 28; the plaintiff filed his second motion for summary judgment on July 18, 2016, dkt. no. 39; and the plaintiff filed a motion to exclude the declaration of Jackie K. Righter on August 15, 2016, dkt. no. 42. Two months later, the plaintiff filed a motion for sanctions, dkt. no. 51, and he voluntarily dismissed his failure-to-intervene claim against Thomas Wiegand two months after that, dkt. no. 52. This decision and order resolves the pending motions, and dismisses the case.

## I.   FACTS

The court takes facts from the "Defendants Proposed Findings of Fact," Dkt. No. 33, and the "Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Facts," Dkt. No. 50. Where the plaintiff objected to the defendants' proposed findings of fact without citing evidentiary material, the court deems those facts admitted for the purpose of deciding summary judgment. Civ. L. R. 56(b)(4). The court takes additional facts from the plaintiff's "Statement of Undisputed Facts," Dkt. No. 41, the plaintiff's sworn declaration, Dkt. No. 45, and his sworn complaint, Dkt. No. 1, which, at the

summary judgment stage, the court construes as an affidavit. <u>Ford v. Wilson</u>, 90 F.3d 245, 246-47 (7th Cir. 1996).

A.    <u>Parties</u>

At the time of the events in the complaint, the plaintiff was an inmate at Racine Correctional Institution ("RCI"). Dkt. No. 33, ¶ 1. The defendants were employees at RCI: Kimberly Graba was a librarian (<u>id</u>., ¶ 2); Jeremiah Curtis was a Lieutenant (<u>id</u>., ¶ 3); Thomas Wiegand was a Captain (<u>id</u>., ¶ 4); and Scott Slome was a Correctional Sergeant (<u>id</u>., ¶ 5).

B.    <u>The Plaintiff's Allegations</u>

On March 4, 2015, the plaintiff went to the prison library and asked Graba to notarize a document entitled "Affidavit of Sovereign Status." <u>Id</u>., ¶ 12. After looking at the document, Graba (who was the librarian) called the security office, because she suspected that the "sovereign citizenship movement"[1] was a "security threat group" whose documents were "contraband" at the prison. <u>Id</u>., ¶¶ 13-14. Graba spoke with Lieutenant Ziem (not a defendant in the case), and Ziem told her to confiscate the document,

---

[1] According to the defendants, "sovereign citizens" are individuals who are anti-government, who believe that they are separate from the United States even though they physically reside in the country. Dkt. No. 33, ¶¶ 31-34. Some sovereign citizens take specific steps to renounce their United States citizenship. <u>Id</u>. They file lawsuits, liens, and other legal documents against government officials in an attempt to obstruct government authority. <u>Id</u>. Some sovereign citizens believe that they are the "Straw-Man," a person who never agreed to the authority of the federal government. <u>Id</u>., ¶¶ 61-62. Thus, they file various legal documents to release themselves from government control, thereby making themselves a "sovereign citizen." <u>Id</u>. They indicate that the FBI uses the term "Sovereign Citizen" to refer to individuals who declare their sovereignty from the United States by overtly filing fraudulent documents or committing other criminal activity." <u>Id</u>., ¶105.

submit it to the security department as contraband, and file an incident report stating what happened. Id., ¶ 14.

Graba went back to the library and told the plaintiff that she was taking the document from him. Id., ¶15. She then asked the plaintiff to show her the other two documents that he had brought with him for notarization. Id., ¶16. The two other documents were identical to the first document, and were entitled "Affidavit of Sovereign Status." Id., ¶17. Graba took all three documents from the plaintiff and completed an incident report. Id., ¶¶18-20, 24. She gave the documents to the security staff, and had no further involvement with the plaintiff's claims. Id., ¶26.

On March 6, 2015, prison staff forwarded all three documents to Slome for review. Id., ¶ 27-29. Slome reviewed the documents and concluded that the layouts (allegedly in affidavit form), along with the plaintiff's name on the documents, were consistent with the how individuals usually declare their status as "sovereign citizens." Id., ¶ 30. As a result, Slome issued Conduct Report #2641802 for "group resistance and petitions," "enterprise and fraud," and "possession of contraband," stating that he believed that the plaintiff was beginning the process of renouncing his United States citizenship. Id., ¶¶ 36, 52. Wiegand (who no longer is a defendant in the case) delivered a copy of the conduct report, along with other documents, to the plaintiff on March 11, 2015. Id., ¶38.

On an unknown date after March 11, 2015, a hearing officer dismissed Conduct Report #2641802 based on "charges not supported." Dkt. No. 41 at 2,

¶8. On March 23, 2015, Wiegand returned the confiscated documents to the plaintiff. Id.; Dkt. No 43 at 3.

On another unknown date before March 26, 2015, the plaintiff moved to Walworth Unit. Dkt. No. 33, ¶ 55. On March 26, 2015, Slome conducted a search of the plaintiff's cell. Id., ¶¶ 54-55. According to Slome, whenever an inmate moves to Walworth Unit, he conducts a "random" cell search within the first couple days to prevent introduction of contraband into the unit. Dkt. No. 38, ¶ 42. According to the plaintiff, Slome conducted the cell search in "retaliation" for Conduct Report #2641802, which the hearing officer had dismissed. Dkt. No. 45, ¶ 15.

During the cell search, Slome found various papers associated with the sovereign citizen movement. Dkt. No. 50, ¶ 58. Slome found one document that appeared to be a contract in which the state was "principal," the plaintiff was "executor," and the contract "insure[d] the Executor as surety binding together jointly on BID BOND in sum of $500,000 a year." Id., ¶ 59. Slome found a letter from the Office of Corporation Counsel of Milwaukee County sent to the plaintiff in response to the "UCC Financing Statement and UCC Financing Statement and Amendment Addendum" that the plaintiff had filed with Register of Deeds. Id., ¶ 60. The letter stated that the plaintiff may be subject to civil and felony "slander of title" charges if he continued to make frivolous filings with the Register of Deeds. Id., ¶ 101. Slome found a form labeled IRS W-6BEN that typically is used by non-U.S. citizens to claim a reduced tax rate/exemption. Id., ¶ 64. Finally, Slome also found other documents used by

sovereign citizens, such as financial chargeback paper work, court bonds, security bonds, etc. Id., ¶ 65. In total, Slome confiscated 111 pages of documents from the plaintiff's cell. Dkt. No. 46 at 4.

Slome completed a "confiscation report" and gave it to the plaintiff. Dkt. No. 33, ¶ 69. The plaintiff then stated, "You don't know anything about sovereigns if that's all you took." Id. Slome then issued Conduct Report #2647851 for "group resistance and petitions" and "unauthorized use of mail." Id., ¶ 70. After he issued the conduct report, Slome had no further involvement with the plaintiff's claims. Id., ¶ 78.

Curtis conducted a review of the conduct report, and concluded that the allegations created "a risk of serious disruption at the institution or in the community." Id., ¶ 81. The next day, Curtis placed the plaintiff in Temporary Lock-Up ("TLU") pending investigation into Conduct Report #2647851. Id., ¶ 79.

The plaintiff stated to Curtis at that time that he felt that he was being harassed by staff about his "legal work," and that the cell search and conduct report were issued in retaliation for the first conduct report that the hearing officer had dismissed. Id., ¶ 85. Curtis told the plaintiff that he was not aware of any previous conduct report and explained that the plaintiff was currently in TLU because of the material Slome found in his cell. Id., ¶ 86. Curtis also informed the plaintiff that he could explain his side of the story at the conduct report hearing. Id., ¶87. Wiegand delivered a copy of the conduct report, along with other documents, to the plaintiff on March 31, 2015. Id., ¶ 90. Curtis and

Wiegand had no further involvement regarding the plaintiff's claims. Id., ¶¶ 89, 97.

On April 1, 2015, a hearing officer held a disciplinary hearing for Conduct Report #2647851 and concluded that the plaintiff was "guilty of violating § 303.24," and that he had possessed documents and papers "consistent with the Sovereign Citizen Movement." Id., ¶ 91. As a result, the hearing officer found the plaintiff guilty of "group resistance and petitions" and sentenced the plaintiff to 30 days in disciplinary segregation. Dkt. No. 1 at 6.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.     First Amendment Retaliation Claim

In his second and third causes of action,[2] the plaintiff alleges "retaliation." Dkt. No. 1 at 3, 5. He alleged that defendant Graba denied him library services in retaliation for him naming her as a defendant in this lawsuit. Id. at 3-5. He also alleged that he was placed in TLU in retaliation for the fact that a conduct report defendant Slome had written about the plaintiff had been dismissed. Id. at 5, 6. He asserts that he told defendant Curtis that he was being placed in TLU in retaliation for the dismissal of the grievance, and states that he "put Lt. Curtis on notice at that moment that he needed to perform his supervisory duties and not let plaintiff suffer deprivations of his rights to his current legal affair documentation material." Id. at 6. He states that Curtis failed to intervene. Id.

The First Amendment to the Constitution prohibits Congress from making laws abridging the freedom of speech, as well as from making laws abridging the right to petition the government for the redress of a grievance. If the government retaliates against someone for exercising their right to free speech or to petition for redress of grievances, that "tends to chill an individual's exercise of his First Amendment rights . . . ." Massey v. Johnson,

---

[2] In the complaint (Dkt. No. 1), the plaintiff numbers the first cause of action he alleges as "3.," located on page 2 of the complaint. He does not assign a number to the second cause of action (located at page 3, about two-thirds of the way down the page. He assigns the number "4." to the third cause of action, located on page 5. He does not number the fourth cause of action, located toward the bottom of page 7. He assigns his fourth cause of action "5.," located on page 8, about halfway down the page. The court will refer to these causes of action by the order in which they appear, followed by the page numbers of the complaint on which they begin.

457 F.3d 711, 716 (7th Cir. 2006). To prove that a defendant retaliated against him for exercising his rights under the First Amendment, the plaintiff must prove "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008)). If a plaintiff can show that retaliatory animus was at least a motivating factor in the retaliatory actions, the burden shifts to the defendants to prove that they would have taken the same actions absent the protected conduct. Spiegla v. Hull, 371 F.3d 928, 943 (7th Cir. 2004) (citing Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The plaintiff alleges that librarian Graba denied him access to the law library and prevented him from being able to access his papers, in retaliation for the fact that he sued her in this case. While it is not clear, he may also allege that Graba denied him access to the library and legal materials in retaliation for the fact that the conduct report Slome had written about the plaintiff got dismissed. He alleges that Slome retaliated against him for the fact that the conduct report Slome wrote against the plaintiff was dismissed, and he argues that Curtis, in his supervisory capacity, failed to intervene and prevent Slome's retaliation.

The first element of a retaliation claim requires the plaintiff to show that he engaged in a constitutionally-protected activity. The plaintiff mentions two

activities in which he engaged that he believes caused the defendant to retaliate against him. First, he argues that defendant Graba retaliated against him because she knew that he was suing her. The Seventh Circuit has held that the "First Amendment right to petition the government for redress of grievances includes the right to access to the courts." Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009) (citations omitted).

Second, he alleges that all three defendants retaliated against him because Lt. Londre dismissed conduct report #2641802 (written by Slome) on March 23, 2015 because of "unsupported evidence." It is a bit more difficult to see how the fact that Londre dismissed conduct report #2641802 constitutes First Amendment activity on the *plaintiff's* part. The plaintiff seems to argue that Slome was upset because he filed a conduct report against the plaintiff, and that Lt. Londre, at Security Director Aldana's order, dismissed it. Dkt. No. 1 at 2-3. The plaintiff does not indicate anywhere that *he* did something, or said something, to cause Lt. Londre to dismiss Slome's conduct report. The dismissal of the conduct report, while it may (or may not) have been upsetting to Slome, was not an exercise of *the plaintiff's* First Amendment rights.

The second element of the retaliation claim requires the plaintiff to demonstrate that he suffered a deprivation that would make him less likely to exercise his constitutional rights in the future. The plaintiff argues that defendant Graba deprived him of library time and resources (such as his legal loan). While the Seventh Circuit has held that "mere denial of access to a prison law library or to other legal materials is not itself a violation of a

prisoner's rights," <u>Marshall v. Knight</u>, 445 F.3d 965, 968 (7th Cir. 2006) (citations omitted), the court agrees that not being allowed to use the library or have access to legal resources is a "deprivation."

The plaintiff argues that Slome deprived him by searching his cell and seizing papers, and that Slome and Curtis deprived him by engaging in conduct that resulted in his being placed in Temporary Lockup Status pending his disciplinary hearing. While it is not clear to the court that a cell search of an incarcerated inmate constitutes a "deprivation," the court will assume for the purposes of this case only that the seizure of the plaintiff's papers was a "deprivation."

The court considers being placed in TLU a "deprivation." Wis. D.O.C. §303.02(40) defines temporary lock up as "a temporary nonpunitive segregated status allowing an inmate to be separated from the general population pending further administrative action." While TLU is not supposed to be punitive, most inmates (including the plaintiff) likely consider being place in segregation for any reason as a "deprivation," compared to being in general population.

The third element requires the plaintiff to show that the defendants were motivated, at least to some degree, by his First Amendment activity when they caused him to suffer the deprivations (denial of access to the library and resources, and placement in segregation). The plaintiff provides two pieces of evidence to prove that the defendants were motivated by his First Amendment activity.

11

First, he provides his own sworn declaration. Dkt No. 45. In this declaration, he declares under penalty of perjury that

> Slome and Graba was aware of me exercising my right to write administrative inmate complaints about the library personal copies being read by the librarian and inmate clerks before this incident, about Graba confiscation of my Affidavits and to a full due process hearing that resulted in a dismissal of a conduct report Slome wrote on me.

Id. at 3. He also declares that "Slome motive comes from the conduct report he wrote regarding the same issue and defaming me was dismissed for 'unsupported evidence.'" Id. Second, he notes the suspicious timing of the cell search, second conduct report, and placement in TLU, several days after the hearing officer dismissed his first conduct report. Neither piece of evidence proves that the defendants were motivated by the plaintiff's exercise of First Amendment rights.

The plaintiff's unsworn declarations regarding Graba and Slome's motives are not based on his personal knowledge. See Fed. R. Civ. P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The plaintiff has no way of knowing another individual's state of mind, and mere speculation is insufficient at the summary judgment stage. Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 544 F.3d 752, 757 (7th Cir. 2008).

Although the court recognizes that it is hard for a plaintiff to prove a defendant's motives when that defendant hasn't stated his or her motives

directly, the plaintiff needs at least one piece of evidence from which the court can infer retaliatory intent. Aside from the unsworn declaration (which is not based on the plaintiff's personal knowledge), the only other evidence that the plaintiff provides to prove intent is the timing of the incidents—several days after his first conduct report was dismissed. The Seventh Circuit has explained, however, that "[m]ere temporal proximity is not enough to establish a genuine issue of material fact" at summary judgment. <u>Andonissamy v. Hewlett–Packard Co.</u>, 547 F.3d 841, 851 (7th Cir.2008) (internal quotation omitted). The fact that Curtis placed the plaintiff in TLU shortly after Londre dismissed Slome's conduct report does not, by itself, prove that Curtis was motivated by the dismissal to put him in TLU. And again, dismissal of the conduct report was not an exercise of the plaintiff's First Amendment rights.

Finally, the plaintiff *did* exercise his First Amendment rights by filing this lawsuit, and naming Graba as a defendant. But the plaintiff alleges that Graba denied him access to the law library and to resources between March 4, 2015 and late June 2015. Dkt. No. 1 at 2-5. The plaintiff did not file his complaint in federal court until June 25, 2015—*after* he alleges that Graba deprived him of the ability to access the library and legal resources. Graba could not retaliate against the plaintiff for First Amendment rights he had not yet exercised. The plaintiff alleged in the complaint that Graba knew that he was going to sue her, because he was approved for a legal loan. <u>Id.</u> at 3. But he doesn't explain how Graba would have known that he was going to use the legal loan to sue her.

Because the plaintiff has not shown that the dismissal of Slome's conduct report was an exercise of his First Amendment rights, and because he has not produced evidence that Graba, Slome and Curtis had retaliatory intent, his retaliation claim against them cannot survive summary judgment.

Even if the plaintiff had been able to produce evidence to support all three elements of a retaliation claim, the defendants met their burden of establishing that they would have taken the same actions even if the hearing officer had not dismissed the first conduct report. With regard to Slome's search of the plaintiff's cell: The plaintiff recently had moved to Walworth Unit, and Slome provided a sworn declaration stating that all inmates new to a unit are subject to a "random" cell search within the first few days of a move to prevent contraband from entering the unit. The plaintiff does not dispute this statement with any facts or evidence; instead, he alleges his suspicion that the cell search was "retaliatory." If all inmates new to a unit have their cells searched at random, then the plaintiff's cell would have been searched after he was moved to Walworth Unit, regardless of whether Slome was upset with him and wanted to retaliate.

Regarding the second conduct report and Curtis placing the plaintiff in TLU pending the hearing for that conduct report, the hearing officer who conducted the disciplinary hearing (not a defendant in this case) found that the plaintiff actually had possessed the items he was accused of having. Therefore, the defendants can show that they would have taken the same actions related to Conduct Report #2647851 and TLU even if Slome was upset with the

plaintiff and wanted to retaliate against him. See Tate v. Jenkins, No. 09-CV-169, 2010 WL 3809765, at *9 (E.D. Wis. Sept. 24, 2010). The court will grant the defendants' motion for summary judgment as to the retaliation claim.

C.    Failure-to-Intervene Claim

In its screening order, the court also allowed the plaintiff to proceed on claims that defendant Curtis failed to intervene to prevent Slome's retaliation against him for his exercise of his First Amendment rights. Dkt. No. 10 at 10. The plaintiff alleged that when Slome confiscated his papers, and when he found out that there was a conduct report against him for possessing the documents Slome had confiscated, he complained to Curtis. He indicates that he told Curtis that he believed that the reason Slome had searched his cell and gotten him written up was to retaliate for the fact that the first conduct report Slome had written about the plaintiff had been dismissed. The plaintiff alleges that, despite telling Curtis this, Curtis took no action to intervene.

The Seventh Circuit has held that, "under certain circumstances, a state actor's failure to intervene renders him or her culpable under § 1983." Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (citations omitted). "A plaintiff may state a claim for failure to intervene by showing that 'any constitutional violation has been committed by a law enforcement official; and the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring.'" Hobbs v. Cappelluti, 899 F. Supp. 2d 738, 754 (N.D. Ill., 2012) (citing , 899 F. Supp. 2d 738, 754 (N.D. Ill., 2012) (citing Yang, 37 F.3d at 285).

Here, the court has found that the plaintiff has failed to present sufficient evidence to support his claim that Slome's search of his cell and confiscation of his papers, and Curtis' subsequent placement of the plaintiff in TLU, was motivated by retaliation against the plaintiff for exercising his First Amendment rights. Because the plaintiff has not demonstrated that the defendants retaliated against him for exercising his First Amendment rights, he cannot demonstrate that Curtis failed to intervene to prevent such a violation. The court will grant the defendants' summary judgment motion on the failure-to-intervene claim.

D.      State Law Defamation

To prevail on a claim for defamation under Wisconsin law, the plaintiff must show:

> (1) a false statement, (2) communicated by speech, conduct, or in writing to a person other than the person defamed, and (3) the communication is unprivileged and is defamatory, that is, tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

Hart v. Bennet, 267 Wis. 2d 919, 941 (Ct. App. 2003).

The complaint is not entirely clear with regard to the "false statements" the plaintiff believes the defendants made. He alleged that he was "attacked" by the defendants because of his beliefs and his political status. Dkt. No. 1 at 8-9. But only once did he make reference to a "false statement"—on page 9 of the complaint, he alleged that "Plaintiff was attacked by Defendant Sgt. Slome, by accusing plaintiff of renouncing his United States Citizenship. In which is a false statement written on State Government Defendant Department of

Corrections documents to a decision maker." Id. at 9. The only support that the plaintiff presented in support of this claim is a sentence in his brief in support of his motion for summary judgment. In that sentence, he states that "nowhere on any record is there evidence of plaintiff being in the process of renouncing his U.S. citizenship, nor is it nowhere in plaintiff affidavits that was confiscated did plaintiff make such a statement or implicate the intent to do so." Dkt. No. 40 at 7.

At the summary judgment stage, a judge must ask whether there is "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." Id. And "mere allegations" are not enough. Id. at 248. Here, a single sentence in an unsworn brief is not "evidence."

Further, the plaintiff's argument improperly tries to shift the summary judgment burden to the defendants. At summary judgment, the defendants do not bear the burden of establishing that a "defamatory" statement is true; the plaintiff must provide evidence to establish that the statement false. The plaintiff asserts that Slome stated in his response to the plaintiff's interrogatories that it was his "opinion" that the papers he found in the plaintiff's cell indicated that the plaintiff was trying to renounce his U.S. citizenship. Dkt. No. 40 at 7. He asks the court to construe the fact that Slome expressed an opinion as evidence that the statements in the second conduct report were "false" and were "defamatory." Id.; Dkt. No. 41 at 4, ¶ III(2). The

court will not draw this inference, because the plaintiff has produced no evidence that Slome's opinion constituted a "false statement." The court will dismiss the plaintiff's state law defamation claim.

## III.  MOTION TO EXCLUDE THE DECLARATION OF JACKIE K. RIGHTER

On August 15, 2016, the plaintiff filed a motion to exclude the declaration of Jackie K. Righter under Federal Rule of Civil Procedure 37(c)(1). Dkt. No 42. Righter is a paralegal with the Wisconsin Department of Justice ("DOJ"), and her declaration authenticates exhibits #107, #108 and #109. Dkt. Nos. 37 (Righter Declaration); 37-1 (Exh. #107); 37-2 (Exh. # 108); 37-3 (Exh. #109). Exhibit #107 is a certification of records from the Office of Corporation Counsel. Dkt. No. 37-1. Exhibit #108 is a letter drafted by Assistant Attorney General Roy Korte to the plaintiff stating that the plaintiff may be subject to civil and felony "slander of title" charges if he continues to make frivolous filings with the Register of Deeds. Dkt. No. 37-2. Exhibit #109 is the Federal Bureau of Investigation's handbook on sovereign citizens. Dkt. No. 37-3.

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The defendants, however, are exempt from Rule 26(a) and (e) in "action[s] brought without an attorney by a person in the custody of the United States, a state, or a state subdivision." Fed. R. Civ. P. 26(a)(1)(B). The plaintiff

is a person in custody of the state and he filed this case without an attorney. Therefore, Rule 37(c)(1) does not apply to the defendants.

The court will deny the plaintiff's motion to exclude the declaration of Jackie K. Righter. Dkt. No. 42.

## IV.    MOTION FOR SANCTIONS

On October 18, 2016, the plaintiff filed a motion for sanctions, alleging that the defendants submitted a witness declaration in bad faith in violation of Fed. R. Civ. P. 56(h). Dkt. No. 51. Specifically, he alleges that Jason Aldana's declaration (Dkt. No. 47, which the defendants filed in support of their response to the plaintiff's statement of undisputed facts) constituted "perjury." Dkt. No. 51. The plaintiff first asserts that it is undisputed that all the documents Slome confiscated from his cell were returned to him. Id. at 2. He argues because the documents were returned to him, they must not have constituted "contraband." Id. at 2-3. The plaintiff then contends that because the Aldana declaration states that that the documents "were placed in a contraband file and not returned to Jackson" (dkt. no. 47 at 3), the declaration is untrue, and constitutes perjury, dkt. no. 51 at 2. He also asserts that he has "reason to believe" that Aldana did not make the declaration, and that the defendants' attorney "submitted [the declaration] deliberately in bad faith." Dkt. No. 51 at 3. He demands that the court order Aldana into court to testify, or to prove that the confiscated documents are contraband. Id.

Fed. R. Civ. P. 56(h) indicates that if a court is satisfied that a party submits a declaration "in bad faith," a court, "after notice and a reasonable

time to respond—may order the submitting party to pay the other party the reasonable expenses . . . it incurred as a result." The court also may hold the offending party in content, or impose other sanctions.

This court is not satisfied that the defendants submitted Jason Aldana's declaration in bad faith. The plaintiff has presented absolutely no evidence that Aldana himself did not prepare the declaration. Nor has he presented any evidence at all to support his claim that if Aldana did prepare the declaration, the statements in that declaration constituted perjury. Indeed, Aldana's declaration seems to support the *plaintiff's* assertion that his documents weren't contraband. Aldana asserts that he himself reviewed the documents and concluded that they weren't contraband. A hearing examiner later determined otherwise, and it appears that Aldana assumed from that that the institution must have retained the plaintiff's papers. The plaintiff says that the institution *didn't* retain his papers, and that they were returned to him. But he provides no evidence to show that *Aldana* knew that, or had reason to know it.

Even if the court had relied on the Aldana declaration in deciding the summary judgment motion (and it has not—whether the plaintiff's papers were or were not contraband is not relevant to the questions raised in the summary judgment motions), the plaintiff has presented no evidence that the Aldana declaration is false, or was submitted in bad faith. The court will deny the plaintiff's motion for sanctions.

## V.    CONCLUSION

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 39.

The court **DENIES** the plaintiff's motion to exclude the declaration of Jackie K. Righter. Dkt. No. 42.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 51.

The court **GRANTS** the defendants' motion for summary judgment (Dkt. No. 28), and **DISMISSES** this case.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the

entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 28th day of February, 2017.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**United States District Judge**